USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/21/09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MELVIN COAKLEY,

                Plaintiff,

- against -

42ND PCT. Case 458, et al.,

                Defendants.

**REPORT AND RECOMMENDATION**

08 Civ. 6206 (JSR) (RLE)

To the HONORABLE JED S. RAKOFF, U.S.D.J.:

## I. INTRODUCTION

Pending before this Court is Defendants' Motion to Dismiss *pro se* Plaintiff Melvin Coakley's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. No. 16.) For the reasons set forth below, I recommend that the Motion be **GRANTED**.

## II. BACKGROUND

### A. Facts Underlying the Instant Action

On July 17, 2006, Joseph Garcia filed a complaint with the New York City Police Department ("NYPD") at the Forty-Second Precinct, alleging that he had been robbed at gunpoint at the northwest corner of Eagle Avenue and East 163rd Street, Bronx, New York. (Decl. of Qiana Smith-Williams in Supp. of Defs.' Mot. to Dismiss the Compl. ("Smith-Williams Decl."), Feb. 4, 2009, Ex. B at 1.) Garcia reported that the perpetrator "approached him, pushed a black handgun into his stomach and demanded money." (*Id.*) Garcia gave the perpetrator ninety dollars, and the suspect fled the scene on foot. (*Id.*) Garcia described his

attacker as a black male, approximately six foot, three inches tall and weighing 210 pounds. (*Id.* at 2.) An eyewitness, Tony Hunter, also provided information about the incident. Hunter stated that he witnessed the robbery from approximately forty-five feet away and that he recognized the assailant from the neighborhood, where the assailant frequently sold T-shirts and DVDs. (*Id.* at 1.) Garcia's complaint was taken by Police Officer John Hostetter, not a defendant in this action. (*Id.* at 3.)

On July 25, 2006, the case was assigned to Officer Daniel Brady, who remained the investigating officer until Coakley's arrest. (Smith-Williams Decl., Ex. C at 1.) Brady interviewed Garcia and Hunter once again (*id.* at 1) and on August 8, 2006, took Garcia on an unsuccessful canvass of the area surrounding the incident. (*Id.* at 3.) After the canvass, Brady took Garcia to view a photo array consisting of twelve photographs on two pages, from which Garcia positively identified Melvin Coakley as his assailant. (*Id.*; *see also* Smith-Williams Decl., Ex. D at 1.) When police found Coakley he was incarcerated on another charge. (*Id.*) On August 24, 2006, Detective Brian Maley brought Garcia and Hunter to view a line-up, which was conducted in the presence of Officer Brown, Assistant District Attorneys Lippiello and Jacobson, and defense attorney Maria Tobia. (*Id.* at 4-5.) Garcia and Hunter both positively identified Coakley as Garcia's attacker and affirmed their identifications by signing line-up reports. (Smith-Williams Decl., Exs. E-F.)

On September 1, 2006, a grand jury indicted Coakley on charges of Robbery in the First Degree, Robbery in the Third Degree, Grand Larceny in the Fourth Degree, and Petit Larceny. (Smith-Williams Decl., Ex. G.) On September 20, 2006, Coakley was produced from Rikers Island and released into Officer Brady's custody pursuant to an arrest warrant, and he was re-

arrested on the above charges and returned to Department of Corrections custody. (Smith-Willaims Decl., Ex. C at 9.)

During the criminal proceedings, on or about February 8, 2007, Coakley moved to dismiss the indictment and to suppress Garcia and Hunter's identifications as unduly suggestive. (Smith-Williams Decl., Ex. H.) Following a Wade hearing, both motions were denied. (*Id.*; *see also* Smith-Williams Decl., Ex. I at 2.) On July 25, 2007, Coakley was acquitted of all charges. (Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem."), Feb. 4, 2009 at 4.)

## B. Procedural History of the Instant Motion

Coakley filed this civil rights action pursuant to 42 U.S.C. § 1983 against the Forty-Second Precinct, Detective Brian Maley, Assistant District Attorney Marisa Capra, and former Assistant District Attorney Vincenzo Lippiello. Specifically, Coakley appears to allege false imprisonment, false arrest, malicious prosecution, due process violations, and conspiracy to deprive him of his constitutional rights. He also claims that he was detained unlawfully for thirteen months as a result of his arrest and prosecution.

Coakley filed his Complaint on or about July 9, 2008. On January 21, 2009, the Court entered an order granting Defendants' application to submit a Motion to Dismiss and set a briefing schedule. (Doc. No. 14.) On February 27, 2009, the Court granted Coakley's request for an extension of time to answer the Motion and revised the previously set briefing schedule. (Doc. No. 19.) By letter dated March 11, 2009, two weeks after the answer deadline had passed, Coakley requested an extension to file an Amended Complaint to "pinpoint express facts." (Coakley's Letter to the Court ("Coakley Letter"), Mar. 11, 2009 at 1.) On April 1, 2009, the Court ordered Coakley to show cause why his Complaint should not be dismissed and warned

3

him that failure to respond might result in dismissal.[1] (Doc. No. 22.) Coakley did not respond to this Order and on May 12, 2009, the Court ordered that the Motion be considered submitted for decision. (Doc. No. 23.)

## III. DISCUSSION

### A. Legal Standard

Dismissal of a complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is proper only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999). The test is not whether a plaintiff is likely to prevail ultimately, but whether he is entitled to offer evidence to support the claims. *See Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998). In reviewing a Rule 12(b)(6) motion, a court must accept the factual allegations in the complaint as true, and all reasonable inferences are drawn in the plaintiff's favor. *See EEOC v. Staten Island Sav. Bank*, 207 F.3d 144 (2d Cir. 2000); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Krimstock v. Kelly*, 306 F.3d 40, 47-48 (2d Cir. 2002). A court does not, however, have to accept as true "conclusions of law or unwarranted deductions of fact." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994), *cert. denied*, 513 U.S. 1079 (1995) (citations omitted). When evaluating a 12(b)(6) motion to dismiss, the court employs a "flexible plausibility standard," which requires the pleader to supplement a claim with factual allegations where necessary to "render the claim plausible."

---

[1] The Court received Coakley's March 11 letter subsequent to entering the April 1 Order to Show Cause. As the Order to Show Cause specifically required Coakley to articulate why Defendants' Motion to Dismiss should not be granted, including presenting additional facts relevant to his claims, the Court concluded that specifically granting the request of an extension of time to amend the Complaint would be duplicative, and therefore unnecessary.

4

*Bilello v. JPMorgan Chase Retirement Plan*, No. 07 Civ. 7379 (DLC), 2009 WL 980846, at *3 (S.D.N.Y. Apr. 10, 2009) (quoting *Boykin v. KeyCorp*, 521 F.3d 202, 213 (2d Cir. 2008)).

A *pro se* complaint is reviewed under a more lenient standard than that applied to "formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *see also Boddie v. Schnieder*, 105 F.3d 857, 860 (2d Cir. 1997). Plaintiffs' *pro se* pleadings "must be read liberally and should be interpreted 'to raise the strongest arguments that they suggest.'" *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (*quoting Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). Further, courts may consider the allegations contained in a *pro se* plaintiff's memorandum of law, where they are consistent with those in the complaint. *See Donahue v. U.S. Dep't of Justice*, 751 F. Supp. 45, 49 (S.D.N.Y. 1990).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation and citations omitted). When a defendant challenges the sufficiency of a complaint by a motion under Rule 12(b)(6), "[t]o survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. V. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555) (footnote omitted). The *pro se* plaintiff, however, is not relieved of pleading requirements. To avoid dismissal, a plaintiff must do more than plead mere "[c]onclusory allegations or legal conclusions masquerading as factual conclusions[,]" *Gebhardt v. Allspect, Inc.*, 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000) (quoting 2 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 12.34(1)(b) (3d ed.

5

1997)), and failure to plead the basic elements of a cause of action may result in dismissal. *Boomer v. Lanigan*, No. 00 Civ. 5540 (DLC), 2001 WL 1646725, at *2 (S.D.N.Y. Dec. 17, 2001).

## B. New York City Police Department as a Defendant

The New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law." N.Y. CITY CHARTER § 396. Accordingly, as an agency of the city, the New York City Police Department ("NYPD") cannot be sued directly. *East Coast Novelty Co., Inc. v. City of New York*, 781 F. Supp. 999, 1010 (S.D.N.Y. 1992). Similarly, as a subdivision of a City agency, the Forty-Second Precinct is not a suable entity. *Id.* Even if Coakley's Complaint were construed as a complaint against the City of New York, Coakley has failed to allege the existence of any governmental policy or custom that would lead to a finding of municipal liability. *See Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690-91 (1978); *see also Adams v. Galletta*, 966 F. Supp. 210, 212 (S.D.N.Y. 1997); *East Coast Novelty*, 781 F. Supp. at 1010-11. Therefore, I recommend that Coakley's complaint as to the Forty-Second Precinct of the NYPD be **DISMISSED**.

## C. Coakley's Conspiracy Claim

In order to survive a motion to dismiss, a § 1983 conspiracy pleading must allege (1) an agreement; (2) joint action causing constitutional injury; and (3) an overt act committed in furtherance of the conspiracy. *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002) (citing *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)). The plaintiff must allege "specific times, facts or circumstances relating to the alleged conspiracy." *Kashelkar v.*

6

*Bluestone*, 306 F. App'x 690, 692 (2d Cir. 2009). General or conclusory allegations are insufficient. *Walker v. Jastremski*, 430 F.3d 560, 564 n.5 (2d Cir. 2005). Additionally, the plaintiff must show that the parties acted jointly as "[t]he independent acts of two or more wrongdoers do not amount to a conspiracy." *Nat'l Congress of Puerto Rican Rights v. City of New York*, 75 F. Supp. 2d 154, 168 (S.D.N.Y. 1999) (citing *Sales v. Murray*, 862 F. Supp. 1511, 1517 (W.D. Va. 1994)).

Coakley's conspiracy allegations cannot survive a motion to dismiss. The only information conceivably relevant to a conspiracy in Coakley's Complaint is his allegation of "transparent set-ups clearly shown." (Compl., Fact Attach. at 2.) Coakley fails to allege that there was an agreement between the Defendants. He does not identify the parties to such an agreement, or specify particular facts relating to an agreement such as its terms or the time and place it was made. He does not allege any facts suggesting that any of the Defendants acted jointly to deprive him of his constitutional rights. As pleaded, Coakley's Complaint merely gives rise to speculations and does not provide Defendants with sufficient notice of the specific incident in question in order to defend against a conspiracy claim. Interpreting the Complaint most favorably to Coakley, I do not find that he has stated a plausible conspiracy claim. Coakley's mere conclusory statements are insufficient to survive the instant motion, and I recommend that the conspiracy claim be **DISMISSED.**

## D. Coakley's False Arrest and False Imprisonment Claims

### 1. Probable Cause

Courts examine 42 U.S.C. § 1983 false arrest claims under the law of the state where the arrest occurred. *Jaegly v. Couch*, 439 F.3d 149, 151-52 (2d Cir. 2006) (quoting *Davis v.*

7

*Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004)). Under New York law, "[t]he common law tort of false arrest is a species of false imprisonment," *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995), and the existence of probable cause requires the dismissal of both claims, *Jones v. J.C. Penny's Dept. Stores Inc.*, 317 F. App'x 71, 73 (2d Cir. 2009). *See Singer*, 63 F.3d at 118; *Zanghi v. Inc. Vill. of Old Brookville*, 752 F.2d 42, 45 (2d Cir. 1985). Probable cause is assessed based on the "totality of the circumstances" surrounding the arrest. *Illinois v. Gates*, 462 U.S. 213, 230 (1983).

An arrest made pursuant to a warrant is based on probable cause. *Weyant v. Okst*, 101 F.3d 845, 855 (2d Cir. 1996). Any knowledge or information that would convince a reasonable person that the accused has committed a crime is sufficient to establish probable cause. *Id.* at 852 (citing *Dunaway v. New York*, 442 U.S. 200, 208 n.9 (1979)). For instance, an eyewitness's testimony and identification gives rise to probable cause, unless specific circumstances should lead the arresting officer to question the truthfulness of the witness. *Maron v. County of Albany*, 166 F. App'x 540, 542 (2d Cir. 2006) (citing *Singer*, 64 F.3d at 119); *see also Thompson v. City of New York*, 603 F. Supp. 2d 650, 657 (S.D.N.Y. 2009) (photo array and line-up identifications by the victim are sufficient to establish probable cause where nothing suggests that the victim's identification is unreliable).

In the instant case, Coakley was arrested pursuant to a warrant issued after a grand jury indictment and three positive identifications. In investigating the incident and effecting Coakley's arrest, the police relied on the statements of the putative victim and an eyewitness. The two statements were consistent, and Coakley has not pointed to any circumstances that might lead one to question their veracity. Based on the physical description provided in the police complaint,

8

the multiple positive identifications by the victim and an eyewitness, a grand jury indictment, and an arrest warrant, a reasonable person in the position of the arresting officer would be justified in finding that Coakley had committed a crime. Construing Coakley's Complaint liberally and interpreting it to raise the strongest claims that it suggests, I find that he can prove no set of facts in support of his false arrest and false imprisonment claims that would entitle him to relief, and I recommend that these claims be **DISMISSED** as to all Defendants.

### 2. Personal Involvement

In order to prevail in a false arrest and false imprisonment action under § 1983, a plaintiff must demonstrate that the defendant was personally involved in the alleged constitutional deprivations, *Alfaro v. City of New York*, No. 03 Civ. 8206 (LTS) (KNF), 2007 WL 258173, at *6 (S.D.N.Y. Jan. 29, 2007), and had knowledge of the facts that rendered the conduct illegal, *Provost v. City of Newburg*, 262 F.3d 146, 155 (2d Cir. 2001). Personal involvement can be established by showing that a defendant "(i) personally participated in the alleged constitutional violation, (ii) was grossly negligent in supervising subordinates who committed the wrongful acts, or (iii) exhibited deliberate indifference to the rights of the plaintiff by failing to act on information indicating that unconstitutional acts were occurring." *Provost*, 262 F.3d at 154 (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).

Coakley has not alleged any facts that indicate that Detective Maley was involved in his arrest, either personally, or in a supervisory capacity. Maley was neither the investigating nor the arresting officer in the case, and was not present during Coakley's arrest. Maley's only involvement in the investigation was to "control and conduct[]" an allegedly tainted line-up. (Compl., Fact Attach. at 2.) However, Coakley was not arrested until several weeks after the line-

up and after an indictment had been issued. (Defs.' Mem. at 6-7.) I find that the mere administration of the line-up does not amount to personal involvement and is therefore insufficient for a finding of liability under § 1983.

Coakley does state in his Complaint that "Maley fabricated [the] entire Complaint Report" which placed him at the scene "just to get a conviction." (Compl., Fact Attach. at 1). While this allegation, if true, might be enough to constitute direct participation, I find that the statement is unsupported speculation and not acceptable as a fact. Police records of the investigation clearly indicate that Maley did not take Garcia's initial complaint. (Smith-Williams Decl., Ex. B at 3.) To the extent that the "complaint report" described by Coakley refers instead to the line-up reports, these may indeed have been authored or administered by Maley.[2] The information in the reports, however, corresponds exactly to the police record and nothing in the materials presented to the Court suggests that the reports were fabricated or falsified in any way. Coakley has not come forward with any specific facts that support his allegation of fabrication and Maley's personal involvement in it. As pled, Coakley's Complaint is only speculative and lacks sufficient details to state a plausible claim on its face. *See Twombly*, 550 U.S. at 547. Moreover, Coakley has alleged no facts showing Maley's awareness of the circumstances surrounding his arrest. Thus, I find that since Maley was not personally involved in Coakley's arrest and prosecution, and since his Complaint does not indicate that Maley was aware of any

---

[2] The line-up reports identify Maley as the officer conducting the line-up, but the forms are only signed by the respective viewer and the assigned investigator, Detective Brady. While it is not clear whether it was Maley or another officer who actually compiled the reports, this uncertainty does not materially affect the outcome of the instant case.

10

facts that may have made Coakley's arrest unconstitutional, I recommend that the false arrest and false imprisonment claims against Detective Maley be **DISMISSED**.

### E. Coakley's Malicious Prosecution Claim

As is the case with false arrest and false imprisonment claims, malicious prosecution claims pursuant to § 1983 are examined under the law of the state where the incident occurred. *Alcantara v. City of New York*, No. 07 Civ. 6480 (JGK), 2009 WL 1767624, at *7 (S.D.N.Y. June 23, 2009). New York law "'places a heavy burden on malicious prosecution plaintiffs[,]'" *Rothstein v. Carriere*, 373 F.3d 275, 282 (2d Cir. 2004) (quoting *Smith-Hunter v. Harvey*, 734 N.E.2d 750, 752 (N.Y. 2000)), requiring them to show, *inter alia*, that the defendant lacked probable cause for the prosecution, and that defendant's actions were motivated by actual malice, *Colon v. City of New York*, 455 N.E.2d 1248, 1250 (N.Y. 1983). Coakley's Complaint fails to allege facts bearing on either element.

#### 1. Probable Cause

The relevant determination in malicious prosecution cases is whether at the time prosecution was commenced, "there was probable cause to believe the criminal proceeding could succeed and, hence, should be commenced." *Mejia v. City of New York*, 119 F. Supp. 2d 232, 254 (E.D.N.Y. 2000). This inquiry differs from the probable cause determination for a false arrest claim as information discovered after the arrest but before the initiation of criminal proceedings is relevant to whether there is probable cause to pursue the case. *Id.* Once probable cause is established to initiate prosecution, a malicious prosecution claim can only succeed if the plaintiff can establish that prosecution continued despite the emergence of new evidence that clearly revealed the "groundless nature of the charges." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996).

11

The issuance of an indictment against the plaintiff creates a presumption of probable cause, *Rothstein*, 373 F.3d at 283; *see also Alcantara*, 2009 WL 1767624, at *10, which can be overcome by establishing that the indictment was a product of "fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Colon*, 455 N.E.2d at 1251. To survive 12(b)(6) dismissal, an indicted plaintiff must allege specific facts relating to such police misconduct. *Rothstein*, 373 F.3d at 284. Moreover, there is a general presumption against police liability unless the plaintiff can show that the police defendants made false statements about the circumstances of arrest or otherwise misled the prosecutor. *Smart v. City of New York*, No. 08 Civ. 2203 (HB), 2009 WL 862281, at *5 (S.D.N.Y. Apr. 1, 2009); *see also Llerando-Phipps v. City of New York*, 390 F. Supp. 2d 372, 383 (S.D.N.Y. 2005) (citing *Williams v. City of New York*, No. 02 Civ. 3693 (CBM), 2003 WL 22434151, at *6 (S.D.N.Y. Oct. 23, 2003)).

Coakley's prosecution was commenced based on three positive identifications by the putative victim and an eyewitness, as well as a grand jury indictment. Coakley has not alleged that any facts were discovered between his arrest and his prosecution that should have made it unreasonable to think that the prosecution against him would succeed. Furthermore, Coakley has not indicated that the criminal proceedings were continued despite the discovery of facts establishing his innocence. It was reasonable for the prosecution to think that a successful case could be made against Coakley, and the prosecutors were justified in commencing and carrying out the proceedings.

Moreover, Coakley has presented no credible allegations of fraud. *See Colon*, 455 N.E.2d at 1251. Although his Complaint speaks of "transparent set-ups clearly shown" (Compl., Fact. Attach. at 2), Coakley presents no specific facts indicating that the indictment was a product of perjury or the suppression of evidence, or that his accusers acted in bad faith. Furthermore, the

integrity of the indictment and grand jury proceedings was challenged during Coakley's criminal trial, and after examination of the grand jury minutes Judge Mogulescu denied Coakley's motion to dismiss the indictment. Thus, without factual support, Coakley's speculations of a set-up are insufficient to overcome the presumption of probable cause created by the indictment.

As to Maley, Coakley has alleged that Maley fabricated the "complaint report" in order to procure a conviction. (*Id.* at 1.) However, as previously discussed, absent specific allegations as to the circumstances of the fraud, such as what information Maley altered and when this occurred, I find this statement to be mere speculation and therefore do not credit it as true. Thus, I find that Coakley has not alleged sufficient facts of fraud or police misconduct to overcome the presumption against liability.

### 2. Actual Malice

In order to establish a malicious prosecution claim, a plaintiff must show that "actual malice [was] a motivation for defendant's actions." *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995). The Second Circuit defines malice for purposes of a malicious prosecution claim as "wrong or improper motive, something other than a desire to see the ends of justice served." *Lowth*, 82 F.3d at 573 (quoting *Nardelli v. Stamberg*, 377 N.E.2d 975, 976 (N.Y. 1978)). This element is closely related to the lack of probable cause. *See Babi-Ali v. City of New York*, 979 F. Supp. 268, 277 (S.D.N.Y. 1997) (citing *Post v. Elser*, 1996 WL 406843, at *8 (N.D.N.Y. July 19, 1996)). In cases where probable cause is lacking, the reviewing court must have a justifiable basis for concluding that the prosecution did not believe the guilt of the accused, and therefore may infer a malicious purpose. *Lowth*, 82 F.3d at 573 (quoting *Conkey v. State*, 427 N.Y.S.2d 330, 332 (N.Y. App. Div. 1980)). Under the facts as outlined in Coakley's Complaint, I find that Coakley can prove no set of facts showing that the prosecution acted maliciously. The record is

filled with evidence supporting the conclusion that the prosecution acted with the genuine and reasonable belief that Coakley was guilty of the crimes for which he had been charged. Even construing Coakley's Complaint liberally and in favor of raising the strongest arguments available, Coakley has alleged no facts that suggest that Defendants acted maliciously.

As Coakley's Complaint has not met the burden of overcoming the presumptions of probable cause and police non-liability, and as he has failed to allege any facts pertaining to the malicious motivation of Defendants, I find that he has failed to meet the elements of a § 1983 malicious prosecution claim, and recommend that the claim be **DISMISSED.**

### F. Coakley's Due Process Claim

The law is well-settled that a suggestive identification alone is not a constitutional violation. *Wray v. City of New York*, 490 F.3d 189, 193 (2d Cir. 2007). "An accused must also demonstrate that the impermissibly suggestive identification procedure deprived him of the right to a fair trial." *Smith v. Ortiz*, No. 01 Civ. 5848 (DAB), 2006 WL 1458404, at *6 (S.D.N.Y. May 25, 2006) (citing *Wray v. Johnson*, 202 F.3d 515, 524 (2d Cir. 2000)). Coakley's Complaint does not include sufficient facts beyond conclusory allegations to establish that the line-ups were unduly suggestive or that he was deprived of his right to a fair trial as a result of participating in the line-ups.

Coakley alleges that his line-ups were unduly suggestive because he was the only dark-skinned male in the room while the fillers were all light-skinned. (Compl., Fact Attach at 2.) "There is no requirement that even in line-ups the accused must be surrounded by persons nearly identical in appearance, however desirable that may be." *United States v. Reid*, 517 F.2d 953, 966 n.15 (2d Cir. 1975). Rather, the question is whether the appearance of the accused was so different from that of the other line-up participants that an identifying witness might be prevented

from making an objective identification. *United States v. Wong*, 40 F.3d 1347, 1359-60 (2d Cir. 1994). In determining the issue of suggestiveness, courts focus on the prominent features identified by complainants and witnesses prior to the line-up; whether "the person who is the object of the lineup is the only lineup participant to have that characteristic[;]" and whether the characteristic was a critical factor in the witness's identification. *Holmes v. Artus*, No. 03 Civ. 7065 (LAP) (GWG), 2005 WL 1027195, at *12-13 (S.D.N.Y. May 4, 2005).

Although a section of the police complaint identifies Garcia's assailant as a dark-skinned black male, Garcia and Hunter's narratives make no mention of the attacker's skin tone. (Smith-Williams Decl., Ex. B at 1, 2.) Coakley has not alleged that his complexion was a prominent feature identified by either witness prior to the line-up, nor that it was a critical factor in the identifications. Coakley does not suggest, and I find no reason to believe, that either Garcia or Hunter identified Coakley because of his skin tone, or that the appearance of the line-up fillers influenced the results of the line-up. *See Holmes*, 2005 WL 1027195, at *12-13; *see also United States v. Perez*, 248 F. Supp. 2d 111, 113-14 (D. Conn. 2003) (a photo array where petitioner's complexion was considerably darker than that of all others was unduly suggestive where the witness had on multiple occasions specifically identified the petitioner as dark-skinned and indicated that he had identified petitioner's photo based on the skin tone). Moreover, upon examining the line-up report (Smith-Williams Decl., Ex. E), I do not find that Coakley was the only individual in the room that matched the assailant's general description such that a witness would be unduly influenced in his identification. Thus, I conclude that Coakley's line-up was not unduly suggestive. Finally, as Coakley was ultimately acquitted of all charges, it is clear that he was not deprived of his right to a fair trial as a result of the line-up. As I find that Coakley's line-

15

up was not unduly suggestive and did not deprive him of his constitutional right to a fair trial, I recommend that Coakley's Due Process claim be **DISMISSED.**

## G. Immunity

### 1. Qualified Immunity of Police Officers

Police officers are entitled to qualified immunity against § 1983 claims if their conduct does not violate clearly established constitutional or statutory rights. *Warren v. Dwyer*, 906 F.2d 70, 74 (2d Cir. 1990), *cert. denied*, 498 U.S. 967 (1990). An officer who mistakenly believed that probable cause existed may still be immune if "arguable probable cause" is found to exist. *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004). Arguable probable cause exists if "either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991). Here, probable cause existed for Coakley's arrest and prosecution based on three positive identifications, a grand jury indictment, and a valid arrest warrant. Thus, Maley is entitled to qualified immunity from § 1983 claims for damages and I recommend that all claims against him be **DISMISSED.**

### 2. Absolute Immunity of Prosecutors

The law is well-settled that prosecutors are entitled to immunity from § 1983 claims for damages. *Imbler v. Pachtman*, 424 U.S. 409 (1976). The extent of the immunity depends on the function that the accused serves, rather than his identity. *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1147 (2d Cir. 1995) (citing *Forrester v. White*, 484 U.S. 219, 229 (1988)). Prosecutors acting within the scope of their duties in initiating and pursuing a criminal prosecution and performing conduct "intimately associated with the judicial phase of the criminal process," are entitled to absolute immunity from liability. *Imbler*, 424 U.S. at 430-31. On the other hand,

prosecutors performing administrative and investigative functions are only entitled to qualified immunity similar to police officers. *Pinaud*, 52 F.3d at 1147. General tasks relating to the process of prosecuting, such as initiating the prosecution, appearing at bail hearings, and presenting a case before a grand jury "fall[] squarely within the prosecutor's traditional function" and give rise to absolute immunity. *Jackson v. Marshall*, No. 04 Civ. 3915 (MBM), 2005 WL 1515403, at *3 (S.D.N.Y. June 21, 2005) (internal citations omitted). Furthermore, "a prosecutor is immune from a suit to recover for an injury arising solely from the prosecution itself e.g.[,] being compelled to stand trial or to suffer imprisonment or pretrial detention." *Lee v. Willins*, 617 F.2d 320, 322 (2d Cir. 1980).

Construing the facts in Coakley's Complaint and Defendants' Motion to Dismiss in a light most favorable to Coakley, the Court finds that Capra and Lippiello acted within the scope of prosecutors' traditional functions and are therefore entitled to absolute immunity from liability under § 1983. Capra and Lippiello's actions pertaining to Coakley's prosecution consisted of attending a line-up, presenting the case to a grand jury, obtaining an arrest warrant, and conducting trial. All of these activities are "intimately associated with the judicial phase of the criminal process," *see Imbler*, 424 U.S. at 430-31, and were performed in furtherance of Coakley's prosecution. Capra and Lippiello's functions were not advisory, or investigative. They are absolutely immune from § 1983 liability and I recommend that all claims against them be **DISMISSED.**

## IV. CONCLUSION

For the foregoing reasons, I recommend that Defendants' Motion to Dismiss be **GRANTED**, and Coakley's Complaint be **DISMISSED.**

Pursuant to Rule 72, Federal Rules of Civil Procedure, the Parties shall have ten (10) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Jed S. Rakoff, 500 Pearl Street, Room 1340, and to the chambers of the undersigned, 500 Pearl Street, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam); 28 U.S.C § 636(b)(1) (West Supp. 1995); FED. R. CIV. P. 72, 6 (a), 6(d).

**DATED: August 21, 2009**
**New York, New York**

                **Respectfully Submitted,**

                */s/ Ronald L. Ellis*

                **The Honorable Ronald L. Ellis**
                **United States Magistrate Judge**

**Copies of this Report and Recommendation were sent to:**

*Pro se* Plaintiff
Melvin L. Coakley
G.R.V.C.
241-08-05488
18-18 Hazen Street
East Elmhurst, NY 11370

Counsel for Defendants
Qiana Charmaine Smith-Williams
NYC Law Department
Office of the Corporation Counsel
100 Church Street
New York, NY 10007

18